## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

G.M. HARSTON CONSTRUCTION CO., INC., )
and GLENN M. HARSTON, )
            )
            Plaintiffs, )
            )
v. )    Case No. 01 C 268
            )
THE CITY OF CHICAGO, an Illinois municipal )
corporation, DAVID E. MALONE, JUDITH RICE, )
RICHARD KINCZYK, STAN KADERBEK, PAUL )    Judge James B. Moran
SPIELES, HUGH MURPHY, JOHN KOSIBA, and )
HARSTON/SCHWENDENER a joint venture )
            )
            Defendants. )

**DOCKETED**

AUG 2 7 2003

## NOTICE OF FILING

To:    see attached service list.

**PLEASE TAKE NOTICE** that on the 26th day of August 2003, Plaintiffs filed their **SECOND AMENDED COMPLAINT**, a true and correct copy of which is attached hereto and hereby served upon you.

*Counsel for G.M. Harston Construction*
*Co., Inc. and Glenn M. Harston:*
Gregory A. Friedman
Paula K. Maguire
Friedman & Holtz, P.C.
11 East Adams, Suite 1600
Chicago, Illinois 60603
(312) 554-1616

Matthew J. Piers
Frederick S. Rhine
Gessler, Hughes & Socol, Ltd.
Three First National Plaza
70 West Adams Street, Suite 2200
Chicago, IL 60602
(312) 580-0100

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| G.M. HARSTON CONSTRUCTION CO., INC., and GLENN M. HARSTON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 01 C 268 |
| THE CITY OF CHICAGO, an Illinois municipal corporation, DAVID E. MALONE, JUDITH RICE, RICHARD KINCZYK, STAN KADERBEK, PAUL SPIELES, HUGH MURPHY, JOHN KOSIBA, and HARSTON/SCHWENDENER a joint venture | ) ) ) ) ) ) | Judge James B. Moran |
| Defendants. | ) | |

**DOCKETED**

**AUG 2 7 2003**

### SECOND AMENDED COMPLAINT AT LAW

Plaintiffs, G.M. Harston Construction Co., Inc., and Glenn M. Harston, by their undersigned attorneys, complain of the Defendants, The City of Chicago, an Illinois Municipal corporation, David E. Malone, Judith Rice, Richard Kinczyk, Stan Kaderbek, Paul Spieles, Hugh Murphy, John Kosiba, and Harston/Schwendener A Joint Venture, an Illinois joint venture, as follows.

### INTRODUCTION

This is a complaint for damages arising from intentional racial discrimination by the Defendants The City of Chicago, David E. Malone, Judith Rice, Hugh Murphy, Paul Spieles, Stan Kaderbek, Richard Kinczyk, and John Kosiba for their refusal to allow Plaintiffs to perform work for the City of Chicago on the same terms and conditions as white-owned businesses on account of their race. Defendants' conduct is in violation of Plaintiffs' rights under the equal protection clause of the 14th Amendment to the United States Constitution, and 42 U.S.C. §§1981and 1983. Plaintiffs also bring claims against Defendant Harston/

Schwendener A Joint Venture under supplemental jurisdiction for breach of contract, quantum meruit, and foreclosure of statutory mechanics lien claims.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

## VENUE

Venue is proper as all of the parties reside in or are located in, and all of the events complained of occurred in this District.

## PARTIES

1.      G.M. Harston Construction Co. Inc. ("Harston Construction") is a minority owned and operated construction company in the State of Illinois. Harston Construction is an Illinois corporation located in Chicago, Illinois. Harston Construction has successfully performed substantial work on several large public projects for various governmental entities including the Chicago Park District, the Metropolitan Water Reclamation District, the Chicago Public Schools, and the Metropolitan Pier and Exposition Authority.

2.      Glenn M. Harston ("Harston") is the president and sole shareholder of Harston Construction. Harston is African-American, and has owned and operated Harston Construction for twelve years.

3.      The City of Chicago ("City") is an Illinois Municipal corporation.

4.      David E. Malone ("Malone") at all times pertinent hereto was the Acting Purchasing Agent and/or Chief Procurement Officer of the City. Malone, as Acting Purchasing Agent, has final policy making authority under the laws of the State of Illinois with

2

respect to contracting with the City, and under the laws of the City to determine the manner of implementation of the City's Minority-Owned and Women-Owned Business Enterprise Procurement Program ("MBE Program").  Malone is sued in his individual and official capacities.  The actions of Malone complained of herein were taken under the color of laws of the State of Illinois and the City.

5.      Judith Rice, at all times relevant herein, was the duly appointed Commissioner of the Chicago Department of Transportation ("CDOT").  Rice is sued in her individual and official capacities.  The actions of Rice complained of herein were taken under the color of laws of the State of Illinois and the City.

6.      Richard Kinczyk, at all times relevant herein, was the duly appointed 1st Deputy Commissioner of CDOT.  Kinczyk is sued in his individual and official capacities.  The actions of Kinczyk complained of herein were taken under the color of laws of the State of Illinois and the City.

7.      Stan L. Kaderbek, at all times relevant herein, was the duly appointed Deputy Commissioner/Chief Engineer of CDOT's Bureau of Bridges and Transit.  Kaderbek is sued in his individual and official capacities.  The actions of Kaderbek complained of herein were taken under the color of laws of the State of Illinois and the City.

8.      Paul Spieles, at all times relevant herein, was the duly appointed 1st Deputy Purchasing Agent for the Chicago Department of Purchases, Contracts and Supplies.  Spieles is sued in his individual and official capacities.  The actions of Spieles complained of herein were taken under the color of laws of the State of Illinois and the City.

3

9.     Hugh Murphy, at all times relevant herein, was the duly appointed Chief Management Officer for the City of Chicago and the Mayor of Chicago Richard Daley's appointed representative relative to matters described herein.  Murphy is sued in his individual and official capacities.  The actions of Murphy complained of herein were taken under the color of laws of the State of Illinois and the City.

10.     John Kosiba, at all times relevant herein, was duly appointed Chief of Infrastructure for the Illinois Department of Transportation.  Kosiba is sued in his individual and official capacities.  The actions of Kosiba complained of herein were taken under the color of laws of the State of Illinois and the City.

11.     Harston/Schwendener A Joint Venture ("HSJV") is an Illinois joint venture engaged in the business of general construction.  The joint venture members are Harston Construction and Paul H. Schwendener, Inc., one of the largest general construction contractors in Illinois. Harston Construction is the 51% owner of HSJV.

## FACTS

### The Project and the Contracts

12.     In 1999, the City determined to undertake a $150 million public works project to redevelop the north end of Grant Park commonly referred to as the Lakefront Millennium Project (the "Project").  The Project is bounded on the south by Monroe Street, on the east by Columbus Drive, on the north by Randolph Street, and on the west by Michigan Avenue (the "Property").  The Project includes the construction of an underground parking garage (the "Garage Structure") and the enclosure of the railroad tracks (the "METRA Structure").  Other

4

facets of the Project include extensive landscaping, performance facilities and an orchestra shell designed by the renowned architect F. O. Gehry

13.     In mid-1999, the contracts for construction of the Garage Structure ("Contract B") and METRA Structure ("Contract E") were publicly bid and ultimately awarded by the City to HSJV.    (Contract B and Contract E are collectively referred to as the "Public Contracts"). The bids on the Public Contracts awarded to HSJV totaled about $105 million.  In addition to HSJV, the City awarded contracts to other general contractors for other portions of the work for the Project.

14.     The City administered the Public Contracts under the direction and supervision of CDOT.  Kaderbek was assigned operational oversight of the Project.

15.     In furtherance of the Public Contracts, HSJV entered into written agreements with Harston Construction for work to be performed under Contract B and Contract E.  As a consequence, Harston Construction became HSJV's largest subcontractor on the Project.

### The Minority Business Enterprise Program

16.     It is the City's policy to foster the participation of Minority Business Enterprises ("MBE") in its public works projects.  In furtherance thereof, the Public Contracts expressly provided that, in accordance with the Municipal code of Chicago and related MBE governing regulations, MBEs:

> shall have the maximum opportunity to participate fully in the performance of this agreement.   Therefor, the contractor shall not discriminate against any person or business on the basis or race, color, national origin, or sex, and shall take affirmative action to ensure that women and minority businesses shall have the maximum opportunity to compete for and perform subcontracts for supplies or services.

5

The Public Contracts further provided for a minimum commitment by the contractor at the time of bidding on the Project to a minimum percentage of the total contract price (inclusive of any and all modifications and amendments) of twenty-five percent (25%) by MBEs.

17.     In connection with the City's MBE bid requirements, and as part of its bid packages, HSJV submitted copies of its current subcontracts with Harston Construction identifying the anticipated scope of all work Harston Construction was to perform on the Project.     HSJV also submitted Harston Construction's Letter of Intent to perform MBE certified work as an MBE subcontractor on the Project.   The Letter of Intent is identified as Schedule C in the Public Contracts.     Schedule C, and Exhibit A attached thereto, describes that work and the value of such MBE certifiable work to be performed by Harston Construction as an MBE subcontractor, for which HSJV would receive MBE participation credits toward its twenty-five percent (25%) MBE commitment.

18.     In November 1998, the City certified Harston Construction as an MBE, eligible to receive credit toward MBE goals on City projects in its specialty areas of construction management, steel erection, excavation, demolition, miscellaneous concrete and carpentry. Pursuant to the certification, the City expressly represented to Harston Construction that its participation on City contracts would not be limited to performing work only in its MBE specialty areas.

19.     Harston Construction was the only African-American certified MBE subcontractor of HSJV listed on Schedule Cs that was performing construction work on the Project.

### Harston Construction's Subcontracts

6

20.     The Harston Construction work that was included in HSJV's bid package for Contract B indicated a commitment to perform concrete, masonry, carpentry, excavation, demolition, miscellaneous iron, structural steel, hollow metal, doors, finish hardware and building specialty work for the Project. The Schedule C submitted with the Contract B bid package, as required by the MBE Program, indicated only that portion of the work to be performed by Harston Construction that was eligible for MBE credit under the MBE Program.

21.     The Harston Construction work that was included in HSJV's bid package for Contract E indicated a commitment to perform selective demolition, excavation, concrete, precast concrete, steel, plumbing, HVAC, and electrical work for the Project. The Schedule C submitted with the Contract E bid package, as required by the MBE Program, indicated only that portion of the work to be performed by Harston Construction that was eligible for MBE credit under the MBE Program.

22.     In furtherance of the City's stated goals of providing MBEs with the maximum opportunity to compete for and perform subcontracts for supplies or services, the subcontract agreements entered into between HSJV and Harston Construction included substantial work over and above the MBE credit eligible work identified in the Schedule Cs under both Public Contracts.

23.     Pursuant to the Contract B subcontracts issued by HSJV, Harston Construction agreed to perform, inter alia, the following work: concrete; masonry; carpentry work; miscellaneous iron work; structural steel work; hollow metal doors; finish hardware; building specialty work; PCC base, sidewalk, curb and gutter work; cast in place concrete work; selective demolition; porous granular embankment; sand backfill; granular sub-base work; and

7

furnish and install reinforcing steel. The Contract B subcontracts between HSJV and Harston Construction are composed of various documents including the detailed plans, drawings, specifications and other documents which were a part of the bid package (collectively, the "Contract B Documents"). (Because of the volume of the remainder of the Contract B Documents, they are not attached hereto but are incorporated into this Complaint by reference and will be produced with any dispositive motion or for trial, to the extent necessary).

24.    Pursuant to the Contract E subcontracts issued by HSJV, Harston Construction agreed to perform, inter alia, the following work: demolition work; structural excavation work; porous granular embankment material work; fabrication and delivery of reinforcing steel; concrete work; precast concrete erection work; and structural steel and precast concrete transporting/coordination work.

25.    The Contract E subcontracts are composed of various documents including the detailed plans, drawings, specifications and other documents which were a part of the bid package (collectively, the "Contract E Documents"). (Because of the volume of the remainder of the Contract E Documents, they are not attached hereto but are incorporated into this Complaint by reference and will be produced with any dispositive motion or for trial, to the extent necessary).

## The City-Generated Cost and Schedule Impacts to the Project

26.    Neither HSJV nor Harston Construction was responsible for the design aspects of the Project.

27.    About a month into this fast-track Project, the City began to issue "holds" on various portions of the work in order to make design revisions to columns and beams initially

8

because of recalculated top deck level design loads and later to accommodate the loads of the proposed Gehry-designed orchestra shell and stainless steel "helix structure" (essentially ribbons of steel and a lattice-type appurtenance over the orchestra shell seating area). The Gehry design was a significant change from the original orchestra shell design. These holds caused HSJV and certain of its subcontractors, including Harston Construction, to perform the work -- when they could perform it at all -- out-of-sequence. The City exacerbated this immediate loss of efficiency by issuing thousands of design revisions piecemeal and in an untimely fashion and by directing the work to resume only in the limited area covered by each revision. The City also issued "holds" not only on new areas of the work because of incomplete drawings or drawings that had to be revised, but also on areas previously released as the revised design drawings and specifications were changed time and again. The delay, extra work, and tremendous loss of efficiency cause by these and other actions by the City during the Project forced HSJV and its subcontractors, including Harston Construction, to incur millions of dollars in additional costs and put the Project substantially behind schedule.

28. Regularly throughout the course of construction, HSJV advised the City both orally and in writing that the above referenced acts and omissions of the City were adversely impacting both the cost and schedule of construction.

29. On various occasions in the Winter and through Spring of 2000, the City requested that HSJV prepare and provide the City with HSJV's then-estimated additional costs incurred on the Project and the estimated costs to complete the Project based upon various completion dates provided by the City.

9

30.    HSJV's proposals for reimbursement of the additional costs, continued progress of the Project, and achievement of the City's Project delivery goals all were rejected by the City.

31.    From mid-April to the end of May 2000, the City held several internal planning meeting to discuss the status of the Project which were typically attended by Rice, Kinczyk, Kaderbek, Spieles, and Murphy.

32.    In one of these April/May 2000 meetings, the City Representatives decided to terminate the Public Contracts with HSJV for the convenience of the City and discussed how the City would compensate HSJV and its subcontractors, including Harston.    The City Representatives determined that HSJV and its subcontractors would be made whole by paying them on a "cost plus" basis, i.e., for the cost of the work performed plus a fair profit thereon.

33.    On or about May 26, 2000, Rice issued a Request for Termination for Convenience to the City's Chief Procurement Officer as provided for under Special Condition 111.8 (Termination for convenience) of the Public Contracts.    In this request, the CDOT expressly acknowledged that "the projects as bid have been materially changed in scope and complexity due to design modifications and other unforeseen circumstances" and that impact costs and schedule delays would "prevent the City from completing the work under these contracts in a timely and cost-effective manner."

## The City's Termination for Convenience

34.    On June 1, 2000, representatives of HSJV, including Glenn Harston, and the City attended a meeting at which Rice, Kinczyk, Kaderbek, Spieles and Murphy (collectively the "City representatives") tendered a letter terminating the work under the Public Contracts

10

with HSJV "for the convenience of the City." On information and belief, Kosiba participated in the decision to terminate HSJV of the convenience of the City. The termination was to become effective June 11, 2000.

35.     At the June 1 meeting, these duly authorized City representatives stated to HSJV and Harston that the City was satisfied with the quality of the work they had performed on the Project. The City also stated that it intended to retain all of the subcontractors to complete the balance of their subcontracted work with HSJV following the termination.

36.     At the June 1 meeting, the City representatives assured HSJV and Harston that, in light of the City's decision to terminate the work under the Public Contracts for the City's convenience, the City would pay HSJV all costs incurred, plus reasonable overhead and profit for the work performed through the effective date of termination, that HSJV and its subcontractors would be made entirely whole and that they would be fully compensated for every dollar spent through the effective termination date with mark up and profit.

37.     At the June 1 meeting, the City representatives also agreed to hold the termination letter and refrain from issuing a press release regarding the termination to give HSJV 24 hours to resubmit another proposal outlining the additional costs and cost impacts incurred as a result of every design revision on the Project through May 2000 and the estimated costs to complete the Project by dates provided by the City. The City representatives stated that if the submission was deemed satisfactory, the City would withdraw the termination letter.

38.     HSJV then, as required by the Public Contracts and as directed by the City, notified Harston Construction and all its other subcontractors similarly to stop all further work required by the Public Contracts.

39.     HSJV spoke with the City representatives on June 2, 2000, and was granted an extension of time to June 5, 2000, in which to submit the new proposal. HSJV submitted its draft proposal to the City on June 5, 2000. Without making any response to HSJV regarding its latest cost proposal, however, the City cancelled its scheduled meeting with HSJV for that afternoon and issued a press release that day, announcing its decision to terminate the work under the Public Contracts for the convenience of the City.

40.     During the week of June 5, 2000, City representatives attended a meeting with HSJV, Harston Construction, and other subcontractors working on the Project. At the meeting, City representatives told the subcontractors that the City intended to allow all subcontractors to stay on the Project to complete the balance of their remaining subcontract work. The City representatives stated that the City intended to enter into new contracts with the subcontractors without resorting to the public bidding process and then assign the contracts to a new general contractor who would be awarded a contract for the work remaining under the Public Contracts following a public bidding process to be conducted by the Public Building Commission.

41.     At the meeting with the subcontractors referenced in the paragraph immediately above and in other public statements, the City also acknowledged that HSJV and its subcontractors had performed well and had not been terminated because of improper or unsatisfactory performance of the work.

12

### The City's Discrimination Against Plaintiffs

42.     On June 10, 2000, the City offered Harston Construction the opportunity to complete its subcontract work under both Contract B and Contract E.  Harston Construction accepted the offer.

43.     Thereafter, on June 13, 2000, the City provided draft contracts to Harston Construction that included only the Schedule C MBE credit eligible work and not the other MBE credit eligible and non-MBE credit eligible work also included under Harston Construction's subcontracts with HSJV.

44.     On or about June 14, 2000, Harston Construction provided the City with copies of its subcontracts with HSJV so that the City could include in the proposed contract agreements with Harston Construction all of the work remaining to be performed under its subcontracts with HSJV and not just its MBE credit eligible work that was set forth on Schedule C to the Public Contracts.

45.     The value of all remaining subcontract work to be performed by Harston Construction under its subcontracts with HSJV, including Schedule C work, exceeded the sum of $33 million.

46.     Thereafter, the City advised Harston Construction that the City would only contract with Harston Construction to perform the balance of Harston Construction's MBE credit eligible work that was originally identified on the Schedule Cs to the Public Contracts between the City and HSJV and not the non-MBE credit eligible work also included under Harston Construction's subcontracts with HSJV.

13

47.   The City's decision to restrict Harston Construction to the performance of MBE credit eligible work that was originally identified on the Schedule Cs to the Public Contracts effectively turned the MBE Program as it applied to the Project into a ceiling on the amount of business that a minority business enterprise would be permitted to conduct with the City of Chicago, rather than an affirmative action opportunity.  Only subcontractors not identified as MBEs on Schedule Cs were allowed to perform non-Schedule C work. The City thus prevented Harston Construction from making and enforcing contracts on the same terms and conditions as white-owned businesses, and violated the constitutional and civil rights of Harston and Harston Construction.

48.   The determination to limit Harston Construction's work to the work described on Schedule C was made as a matter of City policy by one of more of the City' following duly authorized policy makers, Defendants Malone, Rice, Kinczyk, Kaderbek, Spicles, Murphy, and Kosiba.

49.   Harston Construction declined to contract with the City to perform the reduced scope of work mandated by the City rather than the full scope of work remaining to be performed under its contracts with HSJV.

50.   After the termination of HSJV, the City entered into contracts with all subcontractors who so desired, other than Harston Construction, allowing them, unlike Harston Construction, to complete the balance of the work previously included in their respective subcontracts with HSJV.  The City also, in some instances, increased the scope of such work.

51.     After the termination of HSJV, the City also paid various HSJV and Harston Construction subcontractors for work performed prior to the effective date of termination without the prior knowledge or consent of HSJV or Harston Construction and without any attempt to first reconcile with HSJV or Harston Construction amounts due and payable to their respective subcontractors.

52.     One September 11, 2000, HSJV submitted its claims for payment of all unreimbursed Project costs, plus overhead and profit through the June 11, 2000 effective date of the City's termination for convenience in the aggregate amount of $47,097,275.  Of this amount, $23,986,912 represents the monies due for work performed by Harston Construction.

53.     The City has paid sums directly to all subcontractors of HSJV, except Harston Construction, for work performed on the Project during the period April 30, 2000 through the effective termination date of June 11, 2000.

54.     Although the City does not dispute that there is currently owed to HSJV on its last standard progress payment applications the sum of $3.879 million (of which approximately $2,737,000 is due Harston Construction), the City has refused to pay the $3.879 million unless and until Harston Construction releases its liens placed against the public funds under Contracts B and E, respectively, in the amount $20,780,771.

55.     Harston Construction has refused to release its liens against the public funds remaining on the Project.  The pending HSJV termination for convenience settlement claims, notices of public liens filed by HSJV subcontractors, including Harston Construction, and Project funding information produced by the City pursuant to a FOIA request suggest that

15

there is a current shortfall of approximately $100 million to pay for all past, present and future costs of construction of the Project.

## COUNT I
## 42 U.S.C. § 1983 AND EQUAL PROTECTION

1.-55. Plaintiffs reallege and restate paragraphs 1 through 55 above as and for paragraphs 1 through 55 of this Count I as if fully set forth herein.

56. The decision of the City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba to limit Harston Construction to only Schedule C MBE credit eligible work was a race-based decision.

57. The actions of the City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba in denying Plaintiffs the opportunity to complete subcontracts on the same basis as non-minority businesses deprived Plaintiffs of their rights to equal protection of the laws and constitute a violation of 42 U.S.C. § 1983.

58. As a result of the discriminatory conduct of the City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba Plaintiffs have been damaged by the loss of anticipated profits in an amount in excess of $5,000,000.00.

WHEREFORE, Plaintiffs G.M. Harston and Harston Construction Co., Inc., pray for judgment in its favor and against Defendants City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba on Count I and demand damages in an amount in excess of $5,000,000, for punitive damages against Defendants Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba, plus reasonable costs and attorneys fees pursuant to 42 U.S.C. § 1988, plus such other relief as this Court deems just.

## COUNT II
16

## U.S.C. §§ 1981 and 1983

1.-57. Plaintiffs reallege and restate paragraphs 1 through 57 of Count I as and for paragraphs 1 through 57 of this Count II as if fully set forth herein.

58.     The decision of the City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba to limit Harston Construction to only Schedule C MBE credit eligible work was a race-based decision.

59.     The actions of the City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba in denying Plaintiffs the opportunity to complete subcontracts on the same basis as non-minority businesses deprived Plaintiffs of their rights to make and perform contracts on the same terms as white citizens and constitute a violation of 42 U.S.C. §§ 1981and 1983.

60.     As a result of the discriminatory conduct of defendants City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba, Plaintiffs have been damaged by the loss of anticipated profits in an amount in excess of $5,000,000.00.

WHEREFORE, Plaintiffs G.M. Harston and Harston Construction Co., Inc., pray for judgment in its favor and against Defendants City, Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba on Count I and demand damages in an amount in excess of $5,000,000, for punitive damages against Defendants Malone, Rice, Kinczyk, Kaderbek, Spieles, Murphy, and Kosiba, plus reasonable costs and attorneys fees pursuant to 42 U.S.C. § 1988, plus such other relief as this Court deems just.

## COUNT III
## LIEN ON PUBLIC FUNDS - CONTRACT B

1.-55. Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count II as and for paragraphs 1 through 55 of this Count III as though fully set forth herein.

56.     Harston Construction provided and installed all of the materials, labor, services and equipment necessary under the terms and conditions of its Contract B subcontracts, as modified, and fully performed all of its duties and obligations to HSJV and the City thereunder.  All of said materials, services, labor and equipment furnished by Harston Construction thereunder were delivered to and accepted upon the premises where the Project was undertaken, were incorporated in, used in and formed an integral part of said Project and constitute a permanent and valuable improvement to the Property and for the City.

57.     After applying all payments, deductions and credits, there remains the sum of $17,168,990 due Harston Construction for lienable work performed under Contract B.

58.     On or about October 19, 2000, and pursuant to the Illinois Mechanics Lien Act, 770 ILCS 60/23, a Notice of Lien Against Public Funds by G.M. Harston Construction Company, Inc. was duly mailed and served upon HSJV and the City.

59.     On or prior to the service of said Notice of Lien, the City was in possession or had under its control and direction all or part of the monies due to Harston Construction and, by virtue of the above, Harston Construction is entitled to a lien upon all money, bonds and warrants due or to become due to HSJV on account of its contract with the City, and it became the duty of the City to withhold sufficient funds to pay Harston Construction herein.

60.     Harston Construction does not have access to and has no information regarding the books and records of the City or contractors who have performed any work or provided any labor or materials for which they remain unpaid.  Accordingly, facts, documents and other information remain to be determined from the books and records of the City.

18

61.     A copy of this complaint has been personally delivered to the Clerk of the City within ninety (90) days of the date Harston Construction initially served its Notice of Lien pursuant to 770 ILCS 60/23 on public funds as alleged hereinabove and Harston Construction has otherwise fully and properly perfected its claim for mechanics lien on public funds attached hereby.

WHEREFORE, Plaintiff G.M. Harston Construction Company, Inc., prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant City of Chicago on Count III as follows:

A. That an accounting be taken by this Honorable Court of the amounts due Plaintiff under Contract B;

B. That Plaintiff G.M. Harston Construction Company, Inc. be granted a lien upon all monies, bonds, and warrants due or to become due Harston/Schwendener A Joint Venture which are now in the possession of or under the control of the City of Chicago and against which no vouchers have heretofore been issued and that the City of Chicago be ordered and directed to pay to Harston Construction Company, Inc. such amounts found to be due and owing together with statutory interest thereon and for Harston Construction Company, Inc.'s, attorneys' fees and costs;

C. That this Honorable Court appoint a receiver to take possession, custody and control of all funds remaining in the possession of the City of Chicago with regard to the aforesaid construction project; and

D. Award G.M. Harston Construction Company, Inc. such other, further and different relief as this Honorable Court deems just.

19

<u>COUNT IV</u>
## LIEN ON PUBLIC FUNDS - CONTRACT E

1.-55.  Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count III as and for paragraphs 1 through 55 of this Count IV as though fully set forth herein.

56.     Harston Construction provided and installed all of the materials, labor, services and equipment necessary under the terms and conditions of the Contract E subcontracts, as modified, and fully performed all of its duties and obligations to HSJV and the City thereunder.  All of said materials, services, labor and equipment furnished by Harston Construction thereunder were delivered to and accepted upon the premises where the Project was undertaken, were incorporated in, used in and formed an integral part of said Project and constitute a permanent and valuable improvement to the Property and for the City.

57.     After applying all payments, deductions and credits, there remains the sum of $3,611,781 due Harston Construction for lienable work performed under Contract E.

58.     On or about October 18, 2000, and pursuant to the Illinois Mechanics Lien Act, 770 ILCS 60/23, a Notice of Lien Against Public Funds by G. M. Harston Construction Company, Inc. was duly mailed and served upon HSJV and the City.

59.     On or prior to the service of said Notice of Lien, the City was in possession or had under its control and direction all or part of the monies due to Harston Construction and, by virtue of the above, Harston Construction is entitled to a lien upon all money, bonds and warrants due or to become due to HSJV on account of its contract with the City, and it became the duty of the City to withhold sufficient funds to pay Harston Construction herein.

60.     Harston Construction does not have access to and has no information regarding the books and records of the City or contractors who have performed any work or provided

any labor or materials for which they remain unpaid. Accordingly, facts, documents and other information remain to be determined from the books and records of the City.

61. A copy of this complaint has been personally delivered to the Clerk of the City within ninety (90) days of the date Harston Construction initially served its Notice of Lien pursuant to 770 ILCS 60/23 on public funds as alleged hereinabove and Harston Construction has otherwise fully and properly perfected its claim for mechanics lien on public funds attached hereby.

WHEREFORE, Plaintiff G.M. Harston Construction Company, Inc., prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant City of Chicago on Count IV as follows:

A. That an accounting be taken by this Honorable Court of the amounts due Plaintiff under Contract E;

B. That Plaintiff G.M. Harston Construction Company, Inc. be granted a lien upon all monies, bonds, and warrants due or to become due Harston/Schwendener A Joint Venture which are now in the possession of or under the control of the City of Chicago and against which no vouchers have heretofore been issued and that the City of Chicago be ordered and directed to pay to G.M. Harston Construction Company, Inc. such amounts found to be due and owing with statutory interest thereon, and for G.M. Harston Construction Company, Inc.'s attorneys' fees, and costs;

C. That this Honorable Court appoint a receiver to take possession, custody and control of all funds remaining in the possession of the City of Chicago with regard to the aforesaid construction project; and

21

D. Award G.M. Harston Construction Company, Inc. such other, further and different relief as this Honorable Court deems just.

## COUNT V
## BREACH OF CONTRACT AGAINST HSJV - CONTRACT B

1.-55. Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count V as and for paragraphs 1 through 55 of this Count V as though fully set forth herein.

56. After applying all payments, deductions and credits, there remains a sum in excess of $32,545,065 due Harston Construction pursuant to its subcontracts with HSJV under Contract B.

57. The Contract B subcontracts constitute valid, binding, and enforceable contracts between HSJV and Harston Construction.

58. Harston Construction has fully performed all the duties and obligations required of it under the Contract B subcontracts.

59. Harston Construction has demanded payment of HSJV for all sums due it under Contract B subcontracts; however, HSJV has refused and continues to refuse to pay HSJV.

60. HSJV's refusal to pay Harston Construction the sums due and owing constitutes a breach of contract.

WHEREFORE, Plaintiff Harston Construction prays for judgment in its favor and against Defendant HSJV on Count V in an amount in excess of $32,545,065 and such other relief as this Court deems right and just.

22

## COUNT VI
## BREACH OF CONTRACT AGAINST HSJV-CONTRACT E

1.-55. Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count VI as and for paragraphs 1 through 55 of this Count VI as though fully set forth herein.

56. After applying all payments, deductions and credits, there remains a sum in excess of $6,371,222 due Harston Construction pursuant to its subcontracts with HSJV under Contract E.

57. The Contract E subcontracts constitute valid, binding, and enforceable contracts between HSJV and Harston Construction.

58. Harston Construction has fully performed all the duties and obligations required of it under the Contract E subcontract.

59. Harston Construction has demanded payment of HSJV for all sums due it under Contract E Subcontract; however, HSJV has refused and continues to refuse to pay HSJV.

60. HSJV's refusal to pay Harston Construction the sums due and owing constitutes a breach of contract.

WHEREFORE, Plaintiff Harston Construction prays for judgment in its favor and against Defendant HSJV on Count VI in an amount in excess of $6,371,222 and such other relief as this Court deems right and just.

## COUNT VII - IN THE ALTERNATIVE
## QUANTUM MERUIT - CONTRACT B

1.-55. Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count VII as and for paragraphs 1 through 55 of this Count VIII as though fully set forth herein.

23

56.     In the event that this Court finds that there is no valid contract between Harston Construction and HSJV under Contract B, that any such contract or any portion thereof is unenforceable, that the work for which Harston Construction seeks compensation is not within the scope of the any contract, or that HSJV did not substantially perform, Harston Construction alleges that it furnished material, fixtures, services and labor for and at the specific request of HSJV and/or its agents for use in connection with the improvement of the Property.

57.     All the material, fixtures, services and labor furnished by Harston Construction were delivered to, and accepted for, the improvement by HSJV and constitute a permanent and valuable improvement of the Property.

58.     The reasonable value of the labor, material and services supplied by Harston Construction to HSJV on the Property for which HSJV has not compensated HSJV in an amount in excess of $32,545,065.

59.     Harston Construction has made numerous demands upon HSJV to pay the amount of money due and owing. Notwithstanding such demands, HSJV has failed and refused to pay and reimburse Harston Construction therefore.

WHEREFORE, Harston Construction prays for judgement in its favor and against HSJV on Count VII in an amount in excess of $32,545,065 and for such other and further relief as the Court deems equitable.

## COUNT VIII - IN THE ALTERNATIVE
## QUANTUM MERUIT - CONTRACT E

1.-55. Plaintiff Harston Construction realleges and restates paragraphs 1 through 55 of Count VII as and for paragraphs 1 through 55 of this Count VIII as though fully set forth herein.

56. In the event that this Court finds that there is no valid contract between Harston Construction and HSJV under Contract E, that any such contract or any portion thereof is unenforceable, that the work for which Harston Construction seeks compensation is not within the scope of any such contract, or that HSJV did not substantially perform, Harston Construction alleges that it furnished material, fixtures, services and labor for and at the specific request of HSJV and/or its agents for use in connection with the improvement of the Property.

57. All the material, fixtures, services and labor furnished by Harston Construction were delivered to, and accepted for, the improvement by HSJV and constitute a permanent and valuable improvement of the Property.

58. The reasonable value of the labor, material and services supplied by Harston Construction to HSJV on the Property for which HSJV has not compensated HSJV in an amount in excess of $6,371,222.

59. Harston Construction has made numerous demands upon HSJV to pay the amount of money due and owing. Notwithstanding such demands, HSJV has failed and refused to pay and reimburse Harston Construction therefore.

WHEREFORE, Harston Construction prays for judgement in its favor and against HSJV on Count VIII in an amount in excess of $6,371,222 and for such other and further relief as the Court deems equitable.

25

PLAINTIFFS DEMAND TRIAL BY JURY.

                                        Respectfully submitted:

                                        G.M. HARSTON CONSTRUCTION
                                        COMPANY, INC. and GLENN M. HARSTON

                 By:

                                        One of their attorneys

Gregory A. Friedman
Paula K. Maguire
Friedman & Holtz PC
11 East Adams Street, Suite 1600
Chicago, Illinois 60603
(312) 554-1616

Matthew J. Piers
Frederick S. Rhine
Gessler, Hughes & Socol, Ltd.
Three First National Plaza
70 West Madison Street
Suite 2200
Chicago, Illinois 60602
(312) 580-0100

26

## <u>VERIFICATION BY CERTIFICATION</u>

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in the **SECOND AMENDED COMPLAINT** herein are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

G. M. Harston, Inc. and Glenn M Harston

By:  _____

Glenn M. Harston

## CERTIFICATE OF SERVICE

I, Gregory A. Friedman, the undersigned attorney, hereby certify that on the 26th day of August, 2003, I served a copy of the within and foregoing **SECOND AMENDED COMPLAINT AT LAW** via hand-delivery from 11 East Adams Street, Suite 1600, Chicago, Illinois 60603 upon counsel for all parties as listed below:

*For: City of Chicago and David E. Malone*
Adam Kingsley, Esq.
Michael A. Forti, Esq.
Assistant Corporation Counsel
City of Chicago
30 North La Salle Street, Room 900
Chicago, Illinois 60602-2580

Timothy J. Rooney, Esq.
Jack J. Crowe, Esq.
Timothy J. McCaffrey, Esq.
Renee Sotos, Esq.
Winston & Strawn
35 West Wacker
Chicago, Illinois 60601

*For: Harston/Schwendener A Joint Venture*
Scott B. Greene, Esq.
Perkins & Coie, LLC
224 South Michigan Avenue
13th Floor
Chicago, Illinois 60604