IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| G.M. HARSTON CONSTRUCTION CO., INC., and GLENN M. HARSTON, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | No. 01 C 268 |
| THE CITY OF CHICAGO, an ILLINOIS municipal corporation, DAVID E. MALONE, JUDITH RICE, RICHARD KINCZYK, STAN KADERBEK, PAUL SPIELES, HUGH MURPHY, JOHN KOSIBA, and HARSTON/SCHWENDENER, a Joint Venture, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Lakefront Millennium Park Project (Project) had a goal of at least 25 per cent minority business enterprise (MBE) participation. Further, the Project required that a general contractor self-perform not less than 25 per cent of the total work. The first requirement was to ensure MBE participation. The second requirement was to ensure that the general contractor had a vested interest or significant take in the performance of the work, that it was not just a broker.

Plaintiff, an MBE, entered into a joint venture in 1999 with Paul H. Schwendener, Harston/Schwendener, a Joint Venture (HSJV). It owns 51 per cent of HSJV. HSJV had as its purposes the performance of Project Contracts B and E as general contractor. Contract B was for construction of the parking garage and Contract E was for construction of the metra structure. The MBE member was required to self-perform a value half of its ownership

interest in the joint venture times the contract cost, here 25½ per cent. Contract B was in the amount of $72,410,000 and Contract E, $32,633,000. This plaintiff's self-performance obligation on Contract B was $18,464,550 and Contract E, $8,321,415.

Those self-performance obligations also, incidentally, satisfied the 25 per cent MBE obligation, and the HSJV self-performance obligations. Plaintiff could, if it so chose, perform a greater portion of the contracts, wearing its joint venturer hat or acting as a subcontractor. It did perform a greater portion and the section 1981 claim now pending rests in large part on the issue of what hat plaintiff was wearing for what work.

The City seeks to assure itself that the minority and self-performance obligations are satisfied. Those include not only stated contract obligations but also the execution of various schedules. For both Contract B and Contract E, HSJV filed Schedule B, Affidavit of Joint Venture. Each schedule disclosed plaintiff's 51 per cent ownership. Contract B included a number of other documents, including "subcontract agreement #1000 between HSJV and plaintiff," listing a great number of items, representations of what plaintiff was to do, and various clauses relating to the relationship, but did not indicate a dollar amount. HSJV also filed Schedule C, Letter of Intent from MBE/WBE to Perform as Subcontractor, Supplier and/or Consultant, which, together with an Exhibit A, disclosed that plaintiff would perform indicated work in the amount of $18,558,990. Another Schedule C disclosed that a WBE, M.A. Steel Erectors, would perform work in the amount of $3,774,100 on Contract B. Schedule D claimed, on the basis of Schedules B and C, MBE credit of $18,558,990 and WBE credit of $3,744,100. HSJV further submitted Exhibit B-1, an affidavit representing that plaintiff will perform various services for the joint venture, including concrete, masonry, carpentry (rough and finish), miscellaneous iron, structural steel, hollow metal, doors, finish hardware and

building specialty work as described in Schedules A and B. Exhibit B-1 is described in Schedule B as pertaining to the role of plaintiff in the joint venture. No dollar amount was assigned. A Disclosure of Retained Parties represented that plaintiff would do work of an estimated $18,558,990 value as a subcontractor.

Contract E also had numerous attached documents, including two Schedule Cs. One Schedule C disclosed that plaintiff would perform a subcontract worth $8,700,000, while another Schedule C disclosed a WBE subcontract to Mega Steel Corporation in the amount of $1,740,000. Schedule D claimed, on the basis of Schedules B and C, an MBE credit of $8,700,000 and a WBE credit of $1,740,000 for Contract E. The submission also included a document referred to as "subcontract agreement 1100" between HSJV and plaintiff, for work described in Schedule B (pertaining to the role of plaintiff in the joint venture). It also included another copy of Exhibit B-1. No. 1100 did indicate a dollar amount, $17,748,000, but with a different work description from that in Exhibit B-1. The Disclosure of Retained Parties represented that plaintiff would do work on the Metra structure in the estimated amount of $8,700,000 as a subcontractor.

The work proceeded, and HSJV submitted periodic status reports on its employment of MBE and WBE subcontractors (described as DBE/WBEs) and of non-minority subcontractors. In each of them plaintiff was listed as a subcontractor for $18,558,990 for Contract B and $8,956,500 for Contract E. Each status report included MBE/WBE subcontractors other than plaintiff and M. A. Steel Erectors (which was listed for both contracts), but in minor amounts. These were sworn to, under oath, as being a "full, true and complete statement" of all DBE/WBEs. In the last status reports, June 2, 2000, the total subcontracts for DBE/WBEs on Contract B was in the amount of $23,709,190, and for non-

minority subcontractors $17,975,640. On Contract E, the totals were $12,345,750 and $14,771,737.22.

By Spring 2000, the dimensions of the project had significantly increased and it was far behind schedule. The City and HSJV attempted to reach a new agreement, but pricing, scheduling and other issues could not be resolved and the relationship between the City and HSJV deteriorated. On June 1, 2000, the City sent HSJV a ten-day notice of termination for convenience. That is, the termination was not due to any substantial failure of the joint venture to perform but, rather, was due to the failure to agree on how the project should proceed. An interim general contractor was designated to take over for the period before a new general contractor was selected.

In the meantime, all subcontractors were advised that they could continue to perform and could enter into direct contracts with the City, with those contracts to be thereafter assigned to the new general contractor. The City witnesses testified that a reason for so proceeding was to safeguard MBE/WBE subcontractors. Plaintiff concedes that subcontracts were offered to all HSJV subcontractors on the project, including the MBE subcontractors – and including plaintiff. It is what was offered to plaintiff that is the core of plaintiff's equal protection and discrimination claims of Counts I and II of the Second Amended Complaint and the core of defendants' motion for summary judgment.

To prevail, plaintiff must show (1) it is a member of a protected class, (2) that it was similarly situated to persons outside the protected class, and (3) it was treated less favorably than those similarly situated persons. <u>Bratton v. Roadway Package System, Inc.</u>, 77 F.3d 168, 176 (7th Cir. 1996). Plaintiff is a member of a protected class. Whether or not it was similarly situated to others outside the protected class, or whether or not, if it was, it was treated less

favorably than others similarly situated, is largely a matter of characterization. Plaintiff was the only subcontractor who was also a member of a general contractor joint venture. In offering work to other subcontractors, all the work to be performed by them was subcontract work. Plaintiff, on the other hand, was supposedly a subcontractor for some work but was also, as a joint venturer, obligated to perform joint venture work to fulfill both the joint venture ownership MBE requirement and the joint venture self-performance requirement.

The City, at the time of termination, had to determine whether plaintiff was a subcontractor entitled to perform its subcontractor work or whether it was a joint venturer who had been terminated for convenience. And, if it was a subcontractor, the City had to determine the amount of the subcontracts. It chose to take HSJV at its word that plaintiff was a subcontractor to the extent of the sworn disclosures of subcontracts awarded to MBE/WBEs and non-minority subcontractors. This, plaintiff contends, is evidence of discrimination, at least enough to get to a jury, because the offer excluded the work that the City knew was denominated internally in HSJV as subcontract agreements 1000 and 1100. Those are subcontracts, plaintiff argues, and the City's failure to permit plaintiff to perform that work means that, unlike non-minority subcontractors (and other MBEs), it was not permitted to do all the subcontract work it had and was restricted solely to designated MBE work.

To tweak out a discrimination claim from the City's reliance on HSJV'S sworn disclosures is difficult at best. But plaintiff's position also ignores another City objective. There was to be a new general contractor. It is undisputed that the City would require self-performance by that contractor; it did not want a general contractor who was merely a broker. The City's acceptance of the plaintiff's position would have left little or nothing for the new general contractor to self-perform.

That conclusion may be a little difficult to illustrate from the Contract B materials, as plaintiff's submissions contain such large proposed change orders that the numbers bear little relationship to the original bid. It is more easily evidenced by Contract E. The original Contract E amount, as we have noted, was $32,633,000. The self-performance requirement was, therefore, $8,158,250. The plaintiff's proposal after termination was that its subcontract amount was $15,577,570 (Bates No. C19239). That was based on a slightly increased total contract amount because of proposed change orders, but the variance is not significant. The June 2, 2000, status reports disclose subcontracts with MBEs and WBEs in the amount of $12,345,750 (that includes plaintiff subcontracts in excess of $8,500,000), and with non-minority contractors in the amount of $14,771,727.22. If plaintiff was correct about what was its entitlement, but for discrimination, the total subcontracts would be $15,577,570 (plaintiff), $3,389,250 (other MBE/WBEs), and $14,771,727.22 (non-minority subcontractors), for a total of $33,738,557.22, or more than the original contract amount.

It is clear that plaintiff wished to perform a great deal of HSJV (and, thereafter, the new general contractor)[1] self-performance work by treating it as subcontract work. Plaintiff and its partner were entitled to label that work internally any way they wished, but plaintiff could not use that labeling as a means of defeating a legitimate City objective, and the City's adherence to that objective cannot be transmuted into evidence of discrimination. The motion for summary judgment is granted. Given the reasons for granting the motion, we see no need to discuss the other issues raised by the parties.

---

[1] The new general contractor was also an MBE joint venture, although it was selected by a different agency. That MBE joint venturer was likewise required to satisfy the MBE self-performance obligation relating to its ownership percentage and the joint venture was required to satisfy self-performance obligations.

Normally, the granting of summary judgment on all federal claims leads to the dismissal of the remaining state claims without prejudice. But this case has been on file for more than four years. A great deal of judicial effort has gone into it. Just recently parties have begun (we hope) to grapple, with specificity, about their real dispute: what the City may owe plaintiff and/or HSJV for work performed prior to termination. It may well be that the removal of the incendiary charges of racism against the City and various of its employees may also remove an obstacle to meaningful dialogue about the resolution of that real dispute. The motion to dismiss the state claims is denied. *See* <u>Miller Aviation v. Milwaukee County Board of Supervisors</u>, 273 F.3d 722, 731-32 (7th Cir. 2001).

JAMES B. MORAN
Senior Judge, U. S. District Court

July 13, 2005.